Filed 10/31/14  P. v. Miskell CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>KENNETH ROBERT MISKELL et al.,<br><br>    Defendants and Appellants. | D065781<br><br><br><br>(Super. Ct. Nos. RIF1200675,<br>RIF1204877) |

APPEALS from judgments of the Superior Court of Riverside County,

Christian F. Thierbach, Judge.  Judgments affirmed.

Janice R. Mazur, under appointment by the Court of Appeal, for Defendant and

Appellant Kenneth Robert Miskell.

Richard de la Sota, under appointment by the Court of Appeal, for Defendant and

Appellant Suzanne Louise Bishop.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney

General, Julie L. Garland, Assistant Attorney General, and A. Natasha Cortina, Deputy

Attorney General, for Plaintiff and Respondent.

A jury convicted Kenneth Robert Miskell and Suzanne Louise Bishop of seven counts each of robbery related to two separate incidents. The jury also found Bishop guilty of unlawfully taking a vehicle and Miskell guilty of second degree burglary. Miskell received a total prison term of eleven years, eight months. After Bishop admitted the truth of the prior convictions alleged against her, the court sentenced her to a determinate sentence of 15 years and an indeterminate sentence of 175 years to life.

Miskell appeals, contending the trial court erred when it denied his motion to suppress evidence allegedly obtained in violation of *Miranda v. Arizona* (1966) 384 U.S. 436 (*Miranda*). Bishop appeals, contending the trial court (1) did not understand its authority when sentencing her to consecutive terms and (2) erred when it declined to stay her sentence for unlawfully taking a vehicle under Penal Code section 654. (Undesignated statutory references are to the Penal Code.) We reject their arguments and affirm the judgments.

FACTUAL AND PROCEDURAL BACKGROUND

Miskell and Bishop do not challenge the sufficiency of the evidence establishing their convictions. Accordingly, we need only briefly recite the facts of the crimes.

*The First Bank Robbery*

On February 25, 2012, four bank tellers were working at a Chase Bank located in Riverside. In the early afternoon, a man wearing a mask came into the bank shouting, "'Stay there. This is a robbery. Don't move.'" He went from teller to teller instructing each to give him the money in their drawers. The man left the bank, got into the

2

passenger side of a white late model Honda and the car drove off. A total of $10,655 was taken in the robbery.

*The Second Bank Robbery*

On March 3, 2012, three tellers were working at the BBVA Compass Bank located in Sun City when a man came in the bank wearing a mask and shouting that he wanted money. The man ran outside and got into the back seat of an older model maroon Honda which then drove off. Bishop had stolen the Honda earlier that day. After the robbery, the Honda was found with a cell phone inside that belonged to Miskell. Over $22,000 was taken during the robbery.

DISCUSSION

I. *Miskell's Appeal*

A. Background Facts

Before trial, Miskell moved in limine to exclude all statements made by him during a March 6, 2012, interview with FBI Special Agent Michael Brown. At the hearing on the motion, defense counsel conceded that Miskell had met an investigator two days before the interview with Special Agent Brown and the investigator adequately advised Miskell of his *Miranda* rights. At that time, the investigator presented Miskell with a form that listed the four *Miranda* rights. Miskell initialed next to each of the four rights as the investigator reviewed them. Miskell and the investigator then signed the form. The court listened to an audio recording of Miskell's interview with Special Agent Brown and read a transcript of the recording. At the start of the interview, Special Agent

3

Brown indicated he would advise Miskell of his rights. The following exchange occurred:

> "BROWN: You don't wanna - I - I know that there was issues that you're just now waiting for - some other things. We'll talk about those and maybe - right now you - you won't wanna say more, but let us get this out, so we can at least (unintelligible) tell you what we're here for and talk to you about. And that's (unintelligible). All right, uh, before we ask you any questions you must understand your rights. You have the right to remain silent. You have the right to talk to a lawyer for advice before we ask you any questions. You have the right to have a lawyer with you during questioning. Uh, if you decide to answer questions now without a lawyer present, you have the right to start answer- to stop answering at any time. Which is probably the most important one. Um, uh, do you understand those rights?
>
> "MISKELL: Mm-hm.
>
> "BROWN: Okay. I'm in the FBI, (unintelligible) understand your rights. Would you be willing to sign that? You can read it like that. It just says that I've been advised of my rights and that you're gonna talk right now and you can stop anytime. So if you don't mind just signing right there."

Although Miskell signed the form immediately upon Special Agent Brown's request indicating he had been informed of his rights, he did not initial each individual right. During the interview, Miskell admitted to Special Agent Brown that he acted as the get-away driver in both robberies. Special Agent Brown also interviewed Bishop, who admitted stealing the two cars used in both robberies.

The trial court denied the request to exclude Miskell's statements to Special Agent Brown. The court found substantial compliance with *Miranda* because Miskell had been completely advised of his rights two days earlier.

4

B. Analysis

*Miranda* requires that suspects in a criminal case must be warned of their right to remain silent, that anything said could be used against them in a court of law, that they have the right to the presence of an attorney, and that if a suspect cannot afford an attorney, one would be appointed prior to any questioning if so desired. (*Miranda*, *supra*, 384 U.S. at 479.) "[N]o talismanic incantation [is] required to satisfy [Miranda's] strictures." (*California v. Prysock* (1981) 453 U.S. 355, 359.)

While reciting Miskell his rights, Special Agent Brown failed to inform Miskell that his statements could be used against him in a court of law, that he had the right to an attorney and to have an attorney appointed if he could not afford one. For purposes of analysis, we will assume that despite Miskell's signing a form tendered by Special Agent Brown indicating he understood his rights, that Special Agent Brown's *Miranda* advisement was incomplete. The question presented is whether Special Agent Brown needed to completely advise Miskell anew, or whether the complete advisement Miskell received two days earlier satisfied *Miranda*.

"After a valid *Miranda* waiver, readvisement prior to continued custodial interrogation is unnecessary 'so long as a proper warning has been given, and "the subsequent interrogation is 'reasonably contemporaneous' with the prior knowing and intelligent waiver."'" (*People v. Williams* (2010) 49 Cal.4th 405, 434.) "The necessity for readvisement depends upon various circumstances, including the amount of time that has elapsed since the first waiver, changes in the identity of the interrogating officer and the location of the interrogation, any reminder of the prior advisement, the defendant's

5

experience with the criminal justice system, and '[other] indicia that the defendant subjectively underst[ood] and waive[d] his rights.'" (*Ibid.*) Where, as here, the underlying facts are undisputed, we apply a de novo standard of appellate review. (*People v. Waidla* (2000) 22 Cal.4th 690, 730.)

We conclude that Special Agent Brown was not required to readvise Miskell because his interrogation of Miskell was reasonably contemporaneous with the first interrogation. Special Agent Brown's questioning occurred less than two days after the investigator fully informed Miskell of his rights. Miskell remained in custody during the interim time period. Although Special Agent Brown was from a different law enforcement agency, he interviewed Miskell about the same crimes. Near the beginning of the interview, Bishop was brought into the room with Miskell. Miskell then heard one of the FBI agents read Bishop her rights from an advice of rights form. This is the same form that Miskell signed at the start of the interview. Moreover, Miskell's criminal history included at least seven felony convictions, three misdemeanors and numerous probation and parole violations. Nothing in the record suggests Miskell was mentally impaired or otherwise incapable of remembering the prior advisement. Thus, Miskell's prior experience with the criminal justice system, including the full advisement two days earlier and hearing Bishop read her rights, suggested he knew that his statements could be used against him in a court of law, that he had the right to an attorney and to have an attorney appointed if he could not afford one. After independent review, we conclude the superior court did not err in denying Miskell's motion.

Finally, we reject Miskell's assertion that Special Agent Brown misadvised Miskell of his *Miranda* rights, making this case similar to *U.S. v. Botello-Rosales* (9th Cir. 2013) 728 F.3d 865 (*Botello-Rosales*). In *Botello-Rosales*, police officers administered correct *Miranda* warnings in English to a Spanish-speaking defendant. (*Botello-Rosales*, at p. 868.) During a second interview, police gave a Spanish-language warning to the defendant before he was interrogated, which advised the defendant that if he did not have the money to pay for a lawyer, one who was "free" could be given to him. (*Id.* at p. 867.) The Ninth Circuit concluded that the second warning failed to reasonably convey to the defendant his right to appointed counsel as required by *Miranda*, where the Spanish word used for "free" in the warning did not mean "without cost," but rather translated into "liberty." (*Botello-Rosales*, at p. 867.) The court also concluded the fact police officers had previously administered correct *Miranda* warnings in English to the defendant did not cure the constitutional infirmity of the officers' subsequent Spanish-language warning, where, even if the defendant understood the English-language warnings, there was no showing that the officers clarified for the defendant which set of warnings was correct. (*Botello-Rosales*, at pp. 867-868.)

This case is not similar as Miskell was never given contradictory information or misinformation. Here, it is undisputed that before his first interview, Miskell received a proper *Miranda* warning. During his second interview, Special Agent Brown correctly informed Miskell he had the right to remain silent, the right to talk to a lawyer and informed him that he could stop answering questions at any time. Special Agent Brown omitted from the advisement that anything Miskell said could be used against him in a

7

court of law and that if Miskell could not afford an attorney one would be appointed for him prior to any questioning if he so desired. (*Miranda*, *supra*, 384 U.S. at p. 479.)

Special Agent Brown's statement to Miskell that if he "decide[d] to answer questions now without a lawyer present, [he had] the right [] to stop answering at any time" was "probably the most important" right did not render the advisement misleading as Special Agent Brown had already informed Miskell of his right to remain silent. Miskell's argument that Special Agent Brown's statement "gave the incorrect impression that [the] right [to stop answering questions] only existed if he decided to talk without a lawyer present" does not advance Miskell's position because he did not have a lawyer present at the time. Thus, the statement simply informed Miskell that despite the lack of a lawyer, he could stop answering questions at any time.

## II. *Bishop's Appeal*

### 1. Imposition of Consecutive Sentences

### A. Background Facts

At the start of Bishop's sentencing hearing, the court heard from Bishop's brother and mother. Both asked the court to place Bishop in a drug treatment program. After hearing from counsel on the merits of Bishop's motion under *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*), the court said, "I fear that Miss Bishop and her family are laboring under the impression that I have more discretion than I do." The court then stated the following:

> "THE COURT: In order for me to do what is being asked of me by defense counsel, I would have to find that Miss Bishop, at least in part, falls outside the spirit of three strikes. Now, she was an

8

integral part of this bank robbery ring. She stole cars that could be used by the actual perpetrators to help them in their getaway. And she is very proud of her ability to steal cars. She said that on the witness stand.

"And while she herself did not commit any acts of violence in the commission of these crimes, she is, and there is no other way to put this, she is one tough lady. I do not believe, sitting if you will as the 13th juror, I don't believe for one minute that she was operating under duress here. If anybody was physically active here, it would have been her. She could mop up the floor with Mr. Miskell. He is—and struck me as kind of a wuss. I think she was the dominant person in this relationship. And that's kind of corroborated by her behavior as noted in the probation officer's report.

"She was convicted of at least two felonies before she ever went to prison. She has been to prison three times. The first time, she had nine parole violations and was returned to prison. The second time, eight parole violations and went to prison. The third time, seven parole violations and went back to prison. How can I, or any judge with any degree of intellectual honesty, conclude that she falls outside the spirit of three strikes?"

Thereafter, the trial court denied Bishop's motion to strike one or two of her prior convictions. Immediately thereafter, the trial court sentenced Bishop, without objection, to seven consecutive third-strike terms of 25 years to life for the seven counts of robbery for which she had been convicted.

B.  Analysis

Consecutive sentences are permissible if the serious or violent felonies involved in the current case were committed on the same occasion or arose from the same set of operative facts. (§ 667, subd. (c)(6); *People v. Deloza* (1998) 18 Cal.4th 585, 591.) Here, Bishop admits the trial court was required to sentence her to two consecutive third-strike terms of 25 years to life—one count from each of the two robberies. (§ 667, subd.

9

(c)(6).) She asserts the trial court had the discretion to sentence her either consecutively or concurrently as to the remaining robbery counts and that the court "misunderstood its discretion, and mistakenly felt" it was required to impose consecutive sentences as to all seven robbery counts under subdivision (c)(7) of section 667. In support of her assertion, Bishop relies on the court's comment that Bishop and her family were "laboring under the impression that I have more discretion than I do" to show the court believed it was compelled to impose consecutive sentences.

The People assert Bishop forfeited this claim by not objecting below, but even if she did not forfeit this claim, the record fails to show error. In her reply brief, Bishop argues that the forfeiture doctrine does not apply because she is arguing the trial court failed to understand its discretion and is not objecting to the manner in which the trial court exercised its discretion.

We reject the People's assertion that Bishop forfeited this claim by failing to raise it below. "Complaints about the manner in which the trial court exercises it sentencing discretion and articulates its supporting reasons cannot be raised for the first time on appeal." (*People v. Scott* (1994) 9 Cal.4th 331, 356.) Here, Bishop is not complaining about the manner in which the court actually exercised its discretion, impliedly conceding this issue has been forfeited, but rather claims the court did not exercise that discretion because it misunderstood its discretion.

"[A] ruling otherwise within the trial court's power will nonetheless be set aside where it appears from the record that in issuing the ruling the court failed to exercise the discretion vested in it by law." (*People v. Penoli* (1996) 46 Cal.App.4th 298, 302.)

10

"Failure to exercise a discretion conferred and compelled by law constitutes a denial of a fair hearing and a deprivation of fundamental procedural rights, and thus requires reversal." (*Id.* at p. 306.) Relief is warranted on direct appeal, however, only when the court's misunderstanding of its discretion is affirmatively reflected in the record. (See *People v. Fuhrman* (1997) 16 Cal.4th 930, 945 [addressing *Romero* motion].)

Bishop's contention fails because the record does not affirmatively show the trial court mistakenly believed it lacked the discretion to impose concurrent, rather than consecutive terms on the seven robbery counts. The court made its brief comment about the scope of its discretion after hearing requests from Bishop's family for drug treatment and oral argument from counsel on Bishop's *Romero* motion. After denying the *Romero* motion, the trial court switched topics and asked whether there was any legal cause why judgment should not be pronounced. The court then sentenced Bishop. We must reject Bishop's challenge because nothing in the record affirmatively shows the trial court misunderstood its sentencing discretion. Bishop's remedy, if any, will have to be by way of a petition for writ of habeas corpus. (*People v. Mendoza Tello* (1997) 15 Cal.4th 264, 267-268.)

2. Application of Section 654

The jury convicted Bishop of auto theft (count 8) and the trial court sentenced her to a consecutive prison term of eight years. Bishop contends the sentence on this count must be stayed under section 654 because the evidence shows that in taking or driving the car, she harbored the single criminal objective to assist in robbing a bank. We disagree.

11

By its plain terms, section 654 prohibits multiple punishments for the same act or omission.  "[B]ecause the statute is intended to ensure that defendant is punished 'commensurate with his [or her] culpability' [citation], its protection has been extended to cases in which there are several offenses committed during 'a course of conduct deemed to be indivisible in time.'"  (*People v. Harrison* (1989) 48 Cal.3d 321, 335.)  Whether a course of conduct is divisible depends on the defendant's intent and objective.  (*People v. Beamon* (1973) 8 Cal.3d 625, 637.)  "[A] course of conduct divisible in time, although directed to one objective, may give rise to multiple violations and punishment."  (*Id*. at p. 639, fn. 11.)  Where, as here, the trial court made no express findings on application of section 654, a finding that the crimes were divisible is implicit in the judgment and must be upheld if supported by substantial evidence.  (*People v. Blake* (1998) 68 Cal.App.4th 509, 512.)  Accordingly, we review the evidence in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the trier could reasonably have deduced from the evidence.  (*People v. Green* (1996) 50 Cal.App.4th 1076, 1085.)

Here, the evidence shows Bishop stole the car used in the second robbery before 10:00 in the morning.  Once Bishop stole the car, the crime of auto theft was completed.  The robbery occurred at around 1:00 p.m., about three hours later.  The three-hour time period was sufficient for Bishop to reflect upon what she had already done (stolen a car) and what she was about to do (aid and abet a bank robbery).

12

Because the record supports the trial court's implied finding that section 654 does not apply, we reject Bishop's argument that the trial court erred by not staying her sentence for auto theft.

## DISPOSITION

The judgments are affirmed.

McINTYRE, J.

WE CONCUR:

BENKE, Acting P. J.

NARES, J.