Filed 2/24/15  In re L.H. CA

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re L.H., A Person Coming Under the Juvenile Court Law.<br><br>THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>L.H.,<br><br>    Defendant and Appellant. | B253278<br>(Los Angeles County<br>Super. Ct. No. YJ36024) |

APPEAL from an order of the Superior Court of Los Angeles County, Wayne C. Denton, Commissioner.  Affirmed.

Center for Juvenile Law and Policy, Christopher Hawthorne and Samantha Buckingham for Defendant and Appellant.

Kamala D. Harris, Attorney General, Lance E. Winters, Senior Assistant Attorney General, Steven D. Matthews, Analee J. Brodie and Nathan Guttman, Deputy Attorneys General, for Plaintiff and Respondent.

After sustaining petitions alleging that appellant L.H. engaged in the petty theft of a cell phone and receipt of stolen property, the juvenile court ordered appellant placed at home on probation. Appellant contends the order must be reversed because the court erred in determining that he committed petty theft of a cell phone. We affirm.

## RELEVANT PROCEDURAL BACKGROUND

On September 21, 2011, a petition was filed under Welfare and Institutions Code section 602 charging appellant, a minor born in 1995, with the misdemeanor offense of receiving stolen property (Pen. Code, § 496, subd. (a)). Appellant denied the allegation. Later, on December 5, 2012, a second petition was filed under Welfare and Institutions Code section 602 charging appellant with petty theft (Pen. Code, § 484, subd. (a)). Appellant also denied that allegation.

In April 11 and October 11, 2013, the juvenile court conducted adjudication hearings, respectively, on the second and the first petition. At each hearing, the court sustained the pertinent petition. On October 24, 2013, at a disposition hearing encompassing both petitions, the court declared appellant a ward of the juvenile court, determined his offenses to be misdemeanors, and placed him at home on probation. This appeal followed.

## DISCUSSION

Appellant contends the juvenile court's comments relating to its determination that he engaged in petty theft demonstrate the existence of reversible error. As explained below, we disagree.

2

A. *Governing Principles*

Generally, we review the juvenile court's factual determinations for the existence of substantial evidence. (*In re L.K.* (2011) 199 Cal.App.4th 1438, 1446 (*L.K.*).) Under that standard, we must affirm the juvenile court's findings if they are supported by any logical inferences grounded in the evidence. (*Ibid.*) Moreover, "[t]he testimony of a single witness is sufficient to uphold a judgment even if it is contradicted by other evidence, inconsistent or false as to other portions. [Citations.]" (*In re Frederick G.* (1979) 96 Cal.App.3d 353, 366, fn. omitted.)

In reviewing the juvenile court's determination of guilt, our focus is ordinarily on the ruling itself, not the court's reasoning. (*L.K, supra*, 199 Cal.App.4th at p. 1448; *In re Jerry R.* (1994) 29 Cal.App.4th 1432, 1440.) Under California law, it is well established that "'"'" a ruling or decision, itself correct in law, will not be disturbed on appeal merely because given for a wrong reason. If right upon any theory of the law applicable to the case, it must be sustained regardless of the considerations which may have moved the trial court to its conclusion.' [Citation.]" [Citation.]'" (*L.K., supra*, 199 Cal.App.4th at p. 1448, quoting *People v. Zapien* (1993) 4 Cal.4th 929, 976.) Thus, in a criminal bench trial, when the trial court is not required to provide a statement of decision, the court's remarks generally cannot be used to show that it "misapplied the law or erred in its reasoning." (*People v. Tessman* (2014) 223 Cal.App.4th 1293, 1302 (*Tessman*).) That rule is applicable to an adjudication hearing on a petition under Welfare and Institutions Code section 602. (*Jerry R., supra*, 29 Cal.App.4th at p. 1440.)

The rule is subject to exceptions arising "when the court's comments unambiguously disclose that it failed to pass on the merits of the issue [citation],

3

or that its ruling embodied, or rested upon, a misunderstanding of the relevant law [citation] or an arbitrary or irrational point of view . . . ." (*People v. Penoli* (1996) 46 Cal.App.4th 298, 305-306 (*Penoli*).) Thus, when the record affirmatively shows that the court failed to resolve a factual issue regarding which conflicting evidence had been presented, the reviewing court may not imply such a finding in support of the judgment. (*People v. Frank* (1964) 225 Cal.App.2d 339, 342.) Furthermore, the reviewing court "may . . . consider a judge's statement when, taken as a whole*,* the judge's statement discloses an incorrect rather than a correct concept of the relevant law, 'embodied not merely in "secondary remarks" but in [the judge's] basic ruling.'" (*Tessman*, *supra*, 223 Cal.App.4th at p. 1302, quoting *People v. Ortiz* (1964) 61 Cal.2d 249, 253.) Similarly, the reviewing court may consider a judge's statement that he refuses to apply a law because he disagrees with the Legislature's reasons for enacting it. (*Penoli*, *supra*, 46 Cal.App.4th at pp. 303, 306.)

B.  *Underlying Proceedings*

At the adjudication hearing, the prosecution's principal witnesses were S.G., the victim of the theft, and Erin B., who saw the incident. S.G. testified that in November 2012, she attended Hamilton High School. On November 2, 2012, while she ate lunch in the high school patio area, an African-American male wearing a black jacket with a hood grabbed her cell phone and ran away. Accompanying him was an African-American or Latino male wearing a blue sweater or sweatshirt. When S.G. chased the pair, the male wearing the black jacket hopped over the school's fence, and the other male ran into the high school's "lab tech" building. S.G. went to the front of the school, where she

4

reported the theft to a teacher. S.G. testified that she never saw the face of the person who took her phone, and that she did not recognize appellant as the thief.

Erin testified that she knew appellant prior to the theft because she had shared a class with him. On the date of the incident, she was walking at lunch when she saw appellant, who was wearing a black sweatshirt. Accompanying appellant was a Mexican or Hispanic male. Appellant walked to S.G.'s table, snatched her phone, and ran past Erin. Erin tried to help S.G. chase appellant, but he disappeared around a corner. After reporting the theft, Erin told Los Angeles Police Department Officer Enrique Leon that appellant was the thief, and identified his "year book" photo. During cross-examination, Erin stated that she was "not friends" with appellant, and that she did not "really care" for him.

The prosecution also called Officer Leon, the resident officer assigned to Hamilton High School. According to Leon, after the incident, Erin identified appellant as the thief when shown a photo directory of all students assigned to the high school.

Appellant's sole witness was Mary Bain, a teacher at Hamilton High School.[1] Bain testified that she knew appellant prior to the theft because he often attended school events she had organized. On the date of the incident, during the lunch period, Bain left the lab building onto a walkway. She then saw two Latino boys run past her, followed by a girl. According to Bain, she was "100 percent certain" that neither boy was appellant. Shortly afterward, while Bain was talking to the high school's principal, the girl whom Bain had seen earlier approached them and reported that someone had taken her phone. Later, Bain told a security

---

[1] Bain testified that at Hamilton High School, she used her premarital name, and was called "Miss Zink."

guard investigating the incident that one of the boys was Daniel P., a student in her classes.

Following the presentation of evidence, the prosecutor explained that she had called Erin as a witness because S.G. was "not able to identify who took her phone," and argued that Erin was "very credible." Defense counsel also noted that S.G. could not identify the thief, but maintained that Bain was more credible than Erin.

In sustaining the petition, the juvenile court stated: "I thought . . . all [three] witnesses were pretty good. But I believe [Erin]. I was more impressed by [Erin's] testimony. And one of the things that I look at when witnesses are testifying is, [']Do they have a motive for not telling the truth. ['] [¶] In this case, you had [S.G.] and [Erin] both running after the person who took the phone. Now, it would have been very easy for [S.G.] to . . . say, 'Yes, it was [appellant]. I've seen him around campus. I know what he looks like,' to buffer [sic] the testimony of [Erin]. *But she didn't do that.* She says, '*I couldn't see who did it. All I know is it was* [*two*] *males who took* [*the*] *phone.*' [¶] "[It w]ould have been very easy for her to say: [']Oh, yeah. I know what he looks like. [¶] "So you have [two] people, [Erin] and [S.G.], *saying that he's the one that took it.* I was very impressed about that. [¶] "Basically . . . I'm not calling [Bain] a liar or anything. I agree that she's a good witness. But *we have a witness that I believe was telling the truth that actually saw the theft*." (Italics added.)

C. *Analysis*

Appellant does not dispute there is sufficient evidence to support the juvenile court's determination of guilt. He maintains only that the court's remarks relating to that determination disclose a "faulty undertaking" of judicial duty

6

mandating reversal of the judgment. His principal contention relies on the court's remark, "'So you have two people . . . saying that [appellant is] the one that took it. I was very impressed by that.'" Appellant maintains the remark constitutes a cognizable finding of fact reflecting an erroneous determination, namely, that both S.G. and Erin identified appellant as the thief. For the reasons discussed below, we reject that contention.

In order to avoid the application of the rule prohibiting the use of such remarks to establish reversible error, appellant must demonstrate that the remarks "unambiguously disclose" an exception to the rule, that is, a failure to resolve an issue, a critical misunderstanding of law, or "an arbitrary or irrational point of view . . . ." (*Penoli*, *supra*, 46 Cal.App.4th at pp. 305-306.) As explained in *People v. Gorshen* (1959) 51 Cal.2d 716, 734-735 (*Gorshen*), abrogated on other grounds in *People v. Wetmore* (1978) 22 Cal.3d 318, 324-325 & fn. 5, and *People v. Lasko* (2000) 23 Cal.4th 101, 110, in assessing whether judicial remarks fall within an exception to the rule, we are obliged to interpret the remarks as favorable to the judgment, to the extent they are susceptible of such an interpretation.

In *Gorshen*, the defendant killed his foreman, and was charged with murder. (*Gorshen, supra*, 51 Cal.2d at pp. 719, 720-721.) During a bench trial on the charge, a psychiatrist testified that the defendant suffered from chronic paranoiac schizophrenia, resulting in a "disintegration of mind and personality." (*Id.* at p. 722.) In finding the defendant guilty of second degree murder, the trial judge stated that although the psychiatrist's theories were "correct" and defendant "had no particular intent to commit [the] crime," his "hands [were] tied by the [then-existing] legal jurisprudence." (*Id.* at p. 725.) Although our Supreme Court held that the psychiatrist's testimony was admissible to negate the mental states

7

required for murder and manslaughter, it rejected the defendant's contention that the judge's remarks demonstrated error, namely, his failure to give due weight to the testimony due to a mistake of law. (*Id*. at pp. 734.) In determining that the remarks were subject to the rule discussed above, the court found there was a "fair interpretation" of the remarks that showed no misapprehension of law. (*Id*. at pp. 734-735.) The court concluded that notwithstanding the judge's remark that his hands were tied, the judge "did in truth finally decide that his fact finding hands were not tied . . . because he received, considered and gave effect to the expert's testimony on the issues to which it was pertinent." (*Id*. at p. 735.)

Here, no exception to the rule is shown, as the juvenile court's remark, taken in context, cannot reasonably be interpreted to assert that both S.G. and Erin identified appellant as the thief. The remark was prefaced by the court's express statement that S.G. did *not* so identify appellant, and was followed by its observation that "a" -- viz., a single -- witness had made that identification. Moreover, the prosecutor and defense counsel both expressly addressed in their arguments to the court the fact that S.G. had not identified appellant as the thief. Viewed in context, the court's remark was nothing more than a somewhat misleading summary of its preceding comments, namely, that it had been impressed by both witnesses offered by the prosecution to show -- or as the court put it, "'say[]'" -- that appellant had committed the theft.

Appellant's reliance on an out-of-state decision, *Matter of C.J.* (D.C.App. 1986) 514 A.2d 460, is misplaced. There, a juvenile was charged with the theft of a bicycle. (*Id*. at p. 461.) At the juvenile's bench trial, the victim testified that he never got a good look at the thief, and did not know him; moreover, the victim did not testify that he saw the juvenile in possession of the bicycle after theft. (*Id*. at pp. 461-462.) In determining that the juvenile was

guilty, the trial court made express findings, including the finding that the victim had seen the juvenile with the bicycle after the theft. (*Ibid*.) In reversing the judgment on the ground that it was based on "plainly wrong" factual findings, the appellate court expressly noted that a local statute rendered the findings subject to review. (*Id*. at pp. 463-464.) Here, for the reasons discussed above, the juvenile court's remark is not subject to our review as, reasonably construed, it reflects no mistake regarding the evidence presented at the adjudication hearing.

Appellant also contends that the juvenile court's remarks manifest improper burden shifting and witness counting, arguing that "[i]t is inappropriate for the court to rely on [S.G.'s] testimony that she did not see [appellant] take the phone as a positive piece of evidence in favor of [his] guilt." (Italics deleted.) Appellant maintains that because S.G.'s testimony was, in fact, exculpatory, the court effectively required appellant to prove his innocence; in addition, he asserts that the court's remarks suggest an improper reliance "on counting two witnesses against one . . . ."

The court's remarks disclose no such errors. Generally, it is the "'exclusive province'" of the juvenile court to "'determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends.'" (*L.K*., *supra*, 199 Cal.App.4th at p. 1446.) Here, the court manifested no misapprehension regarding its duties as fact finder or the burden of proof. In commenting on S.G.'s testimony that she could not identify the thief, the court focused on her credibility, never suggesting that her testimony was direct evidence of appellant's guilt. Furthermore, the court's interest in S.G.'s credibility was appropriate: although S.G. did not identify the thief, her testimony, viewed in context, was *not* exculpatory, as her account of the theft and description of the thief's clothing corroborated Erin's testimony regarding those matters. The court thus properly

9

evaluated S.G.'s credibility and relied on the testimony from both witnesses in determining whether appellant was guilty.  In sum, appellant has shown no cognizable error in the court's comments.


**DISPOSITION**

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


MANELLA, J.


We concur:


WILLHITE, Acting P. J.


COLLINS, J.