Filed 1/24/24  P. v. Fontenette CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>JONATHAN LAYDONGANA FONTENETTE,<br><br>Defendant and Appellant. | D081752<br><br><br>(Super. Ct. No. SCD294656) |

APPEAL from a judgment of the Superior Court of San Diego County, Joan P. Weber, Judge.  Affirmed.

Laura Vavakin, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, A. Natasha Cortina, Stephanie A. Mitchell, Christine Levingston Bergman, Deputy Attorneys General, and Alice X. Wang, Associate Deputy Solicitor General, for Plaintiff and Respondent.

Jonathan Laydongana Fontenette was sentenced to a determinate term in prison for two counts of making felony criminal threats that included a

consecutive term for a deadly weapon enhancement. On appeal, he claims (1) the court abused its discretion by failing to exercise its mandatory duty to consider dismissing the enhancement under Penal Code section 1385, subdivision (c)(2); or, alternatively, (2) his trial counsel provided ineffective assistance of counsel by failing to argue to dismiss the enhancement under the same subdivision.

We conclude the silent record does not evidence the court misunderstood its sentencing authority; accordingly, Fontenette's first challenge is forfeited. Moreover, Fontenette fails to meet his heavy burden on direct appeal to establish ineffective assistance of counsel. We thus affirm.

## I.

## A.

On three occasions in April and May 2022, Fontenette attacked security guards who work at the entrance of a government agency. During the first incident, Fontenette "sucker-punched" a guard "all of a sudden," grabbed for the guard's gun, and repeatedly threatened to "kill" or "get" the guards who detained him, one of whom was the security director.

Several weeks later, Fontenette approached the security director and "lunged and swung at" him with a closed fist, hitting the director's arm. Before he ran off, Fontenette said he was "going to get [the director]." Later that day, Fontenette initiated a physical altercation with another guard (guard 2) who had been involved in the first incident, saying he was "'going to come back for [guard 2] and [his] boss, just like the last motherfucker [Fontenette] killed.'"

The next day, Fontenette loitered outside the agency asking for the security director, who refused to come outside. Fontenette eventually ran

2

toward guard 2 with a sheathed machete, and guard 2 entered a pharmacy to get away. Fontenette pressed himself against the pharmacy's window, pointed the machete at guard 2, drew the machete mostly out of its sheath, and mouthed, "'You're next, like the last motherfucker I killed.'"

In October 2022, a jury found Fontenette guilty of two counts of felony criminal threats based on these incidents. It also found true the allegation Fontenette used a deadly weapon.

### B.

Before sentencing, defense counsel requested probation for Fontenette. Although presumptively ineligible, Fontenette's counsel argued several factors limited his culpability, making probation appropriate. Defense counsel also cited several factors in mitigation supporting probation. Alternatively, defense counsel requested a low-term sentence under Penal Code section 1170, subdivision (b), as Fontenette's childhood trauma was a mitigating factor not outweighed by nonexistent factors in aggravation. Defense counsel did not request dismissal of the deadly weapon enhancement under section 1385.

The probation officer identified at least five prior or subsequent incidents involving similar charges and noted that Fontenette had performed poorly during prior periods of community supervision. A month before the incidents underlying Fontenette's conviction, Fontenette had kicked a police officer in the chest. And while in custody for the charged offenses, Fontenette "assaulted another inmate by continuously punching, kicking, and delivering knee strikes to the inmate's head," resulting in "lacerations to [the inmate's] face" and a "fractured right orbital." Probation identified no "particularly applicable" circumstances in mitigation but several possible circumstances in aggravation, including that Fontenette's "prior convictions as an adult are of

3

increasing seriousness in that his behavior has escalated to violent conduct." Probation opined that Fontenette's "continue[d] . . . aggressive and violent behavior" made him "a danger to the community." The probation report did not address section 1385.

At the February 2023 sentencing hearing, the court—the same judicial officer who had presided over the trial—noted it had reviewed the probation report and defense counsel's brief. Given the facts of the offenses and Fontenette's record, the court found he was not a candidate for probation. When allowed the opportunity to speak "on [her] client's behalf," defense counsel demurred and submitted on the brief.

As relevant here, the court then imposed the middle term on the primary offense, saying it "considered a low term, but given the prior criminal history [and] the issues on supervision," the low term "was not appropriate." The court also imposed a consecutive one-year term for the enhancement. The record contains no discussion of section 1385.

## II.

Fontenette raises two issues on appeal: (1) the sentencing court abused its discretion in misapprehending its sentencing discretion and failing to consider dismissing the deadly weapon enhancement as required; and (2) his trial counsel provided ineffective assistance of counsel in failing to argue that the enhancement should be dismissed under amended section 1385, subdivision (c)(2).

For the following reasons, we disagree on both points.

## A.

### 1.

Penal Code section 1385, subdivision (a), allows a judge to, "either on motion of the court or upon the application of the prosecuting attorney, and

in furtherance of justice, order an action to be dismissed." (Pen. Code, § 1385 subd. (a).) Effective January 1, 2022, Senate Bill No. 81 (2021-2022 Reg. Sess.) added new subdivision (c) to section 1385 but left subdivision (a) unchanged. (Stats. 2021, ch. 721, § 1.)

Subject to inapplicable exceptions, the new subdivision states: "Notwithstanding any other law, the court *shall* dismiss an enhancement if it is in the furtherance of justice to do so." (Pen. Code, § 1385 subd. (c)(1), italics added.) "In exercising its discretion under this subdivision, the court shall consider and afford great weight to evidence offered by the defendant to prove that," relevant here, "[t]he current offense is not a violent felony" as defined elsewhere in the Penal Code. (*Id.*, subds. (c)(2) & (c)(2)(F).) Proof that the offense is not a violent felony "weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety." (*Id.*, subd. (c)(2).)

2.

Fontenette claims subdivision (c) of section 1385 "imposes a mandatory duty on the trial court to consider dismissing an enhancement" if one of the mitigating circumstances is proven. The record shows that none of Fontenette's offenses were violent felonies. But Fontenette claims "[t]he record demonstrates [the court] did not" fulfill its duty at sentencing, and the "recency" of the change to section 1385 undermines confidence in the court's awareness of that duty. Relying on *People v. Panozo* (2021) 59 Cal.App.5th 825 (*Panozo*), Fontenette thus claims the general presumption a sentencing court is aware of and acts in accordance with sentencing law is inapplicable here.

The People, however, distinguish *Panozo* and argue Fontenette forfeited his claim that the court failed to consider dismissing the enhancement by failing to object during sentencing.

3.

"[T]he forfeiture rule for alleged sentencing errors" is that, "unless a party makes a contemporaneous objection, he or she generally cannot challenge a court's ruling for the first time on appeal." (*People v. McCullough* (2013) 56 Cal.4th 589, 594.) There is, however "a narrow class of sentencing issues that are reviewable in the absence of a timely objection." (*People v. Leon* (2016) 243 Cal.App.4th 1003, 1023.)

"Defendants are entitled to sentencing decisions made in the exercise of the 'informed discretion' of the sentencing court." (*People v. Belmontes* (1983) 34 Cal.3d 335, 348, fn. 8.) A court "unaware of the scope of its discretionary powers," however, cannot exercise informed discretion. (*Ibid.*) "Failure to exercise a discretion conferred and compelled by law constitutes a denial of a fair hearing and a deprivation of fundamental procedural rights, and thus requires reversal." (*People v. Penoli* (1996) 46 Cal.App.4th 298, 306.)

Nonetheless, "in light of the presumption on a silent record that the trial court is aware of the applicable law, including statutory discretion at sentencing, we cannot presume error where the record does not establish on its face that the trial court misunderstood the scope of that discretion." (*People v. Gutierrez* (2009) 174 Cal.App.4th 515, 527.)

4.

Section 1385 was not mentioned by anyone in the written or oral record, and Fontenette's counsel did not object to any failure to consider dismissing the enhancement at the sentencing hearing. As a result, unless an exception applies, Fontenette forfeited this claim of sentencing error.

6

Fontenette attempts to evade forfeiture by arguing the court was unaware of section 1385's new subdivision (c) and thus violated due process by failing to exercise its mandatory sentencing obligations. To make this point, Fontenette analogizes this case to *Panozo* and *In re D.L.* (2012) 206 Cal.App.4th 1240 (*In re D.L.*). But we are not persuaded.

In *Panozo*, the record was "ambiguous," rather than silent, "as to whether the trial court was aware of its statutory obligations." (*Panozo, supra*, 59 Cal.App.5th at p. 840.) There, the defendant's sentencing memorandum evidenced post-traumatic stress disorder (PTSD) from his military service, which he claimed contributed to his commission of the at-issue offenses. (*Id.* at p. 829.) The court was required, under a different set of sentencing statutes, to (1) "'make a determination'" as to whether the defendant suffered from such a qualifying service-related condition and, if so, (2) consider the fact both in favor of granting probation and as a mitigating factor in imposing any determinate term. (*Id.* at p. 836, citing Pen. Code §§ 1170.9, subds. (a) & (b), 1170.91, subd. (a).) "[D]espite ample references to [the defendant]'s service-related PTSD," however, the sentencing memoranda and probation report failed to mention the relevant statutes. (*Id.* at p. 837.) Furthermore, at sentencing, the court failed to reference the statutes, make the requisite eligibility determination, and include the defendant's PTSD as one of the mitigating factors it expressly considered on the record. (*Id.* at pp. 837-839.) Under these circumstances, the reviewing court inferred the court misunderstood its statutory obligations such that the record was "ambiguous" rather than "silent" on this issue. (*Id.* at pp. 837, 840-841.) The appellate court thus directed the trial court on remand to decide if the defendant had a qualifying service-related condition and, if so, appropriately consider that fact in sentencing. (*Id.* at p. 841.)

7

Here, however, we conclude the record is silent, rather than ambiguous, on the court's awareness and exercise of its sentencing discretion. Accepting for purposes of this opinion that amended section 1385 affirmatively requires a court to at least consider the possibility of dismissing sentencing enhancements, as Fontenette contends, the record does not give rise to any inference the court misapprehended this duty.

Most importantly, unlike the statutes at issue in *Panozo*, section 1385 does not require the court to make an affirmative, sua sponte presentencing determination as to the existence of mitigating circumstances. (Pen. Code § 1170.9, subds. (a)-(b); § 1170.91, subd. (a).) Rather, section 1385, subdivision (c)(2), requires only that the court "consider and afford great weight to evidence *offered by the defendant.*" (§ 1385, subd. (c)(2), italics added.) Even though it was clear on the record none of the offenses were violent offenses, Fontenette did not offer that evidence. Accordingly, the sentencing court was not required to "afford great weight" to that fact or justify imposing the enhancement nonetheless by "find[ing] that dismissal of the enhancement would endanger public safety." (*Ibid.*)

Moreover, although the sentencing court did not mention section 1385, much less its mitigating factors, the interests of justice, or endangerment of public safety, it was not obligated to do so. While "a statement of a reason" is required when "[g]*ranting* relief under section 1385," the same is not true when *denying* relief. (Cal. Rules of Court, rule 4.406(b)(7), italics added; Pen. Code § 1385, subd. (a).)

Further, unlike in *Panozo*, where the defendant's PTSD was absent from the mitigating factors the court stated on the record, the court here did not identify any mitigating circumstances on the record; accordingly, it did not plainly omit the relevant circumstance. (*Panozo, supra*, 59 Cal.App.5th

8

at p. 838.) And here, the court referenced, without naming, section 1170, subdivision (b), in saying it considered the low term for the primary offense but found it "not appropriate" given Fontenette's criminal history and prior issues on community supervision. (§ 1170, subd. (b).) That the court was aware of and considered that sentencing change, implemented contemporaneously with the amendment to section 1385 more than a year before Fontenette's sentencing, supports an inference the court additionally was aware of and considered the amendment to section 1385.

*In re D.L.*, on which Fontenette also relies, is distinguishable as well. There, the appellate court found the minor petitioner's failure to object to the summary nature of juvenile court proceedings did not forfeit his claim that the juvenile court failed to provide him with notice of or to conduct a hearing on deferred entry of judgment as statutorily required. (*In re D.L.*, *supra*, 206 Cal.App.4th at pp. 1244-1245.) But the record in *In re D.L.* was even clearer than that in *Panozo* that the juvenile court failed to complete statutory presentencing requirements, as the minor never received compulsory notice of a mandatory hearing that the record strongly suggested never took place. (*Ibid.*) Again, these are different from the requirements at issue in this appeal, and the record in *In re D.L.*, unlike the record here, was not "silent." (See generally *id.* [containing no mention, much less discussion, of "silent" record].) Therefore, *In re D.L.* does not preclude forfeiture of Fontenette's claim.

In sum, on this silent record, we cannot conclude the court misapprehended, and thus failed to exercise, its sentencing discretion and obligations under section 1385. (See *People v. Coleman* (Jan. 5, 2024, A165198) __ Cal.App.4th __ [2024 Cal.App.Lexis 4 at p. *9].) Rather, it is likely the court concluded—without stating its reasoning on the record, as it

9

was entitled to do—that dismissal of the enhancement was not in the furtherance of justice. (§ 1385, subd. (c)(1); Cal. Rules of Court, rule 4.406(b)(7).) Accordingly, we determine Fontenette forfeited his claim that the court abused its discretion by improperly failing to consider dismissing the enhancement. We also deem forfeited, and thus decline to address, Fontenette's conclusory, unsupported argument that remand is appropriate to permit further investigation of possible mental health issues and childhood trauma. (*People v. Stanley* (1995) 10 Cal.4th 764, 829.)

B.

In the alternative, Fontenette claims his trial counsel's failure to request dismissal of the enhancement under section 1385, subdivision (c)(2), deprived him of his constitutional right to effective assistance of counsel. We disagree.

To establish ineffective assistance of counsel, the defendant must show both that: (1) "counsel's representation fell below an objective standard of reasonableness . . . under prevailing professional norms," and (2) "there is a reasonable probability"—one that "undermine[s] confidence in the outcome"—"that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (*Strickland v. Washington* (1984) 466 U.S. 668, 688, 694.) There is a strong presumption counsel acted reasonably, so, "[o]n direct appeal, a conviction will be reversed for ineffective assistance only if (1) the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation." (*People v. Mai* (2013) 57 Cal.4th 986, 1009.)

Fontenette contends his counsel's apparent ignorance of and failure to invoke section 1385, subdivision (c)(2), was both objectively unreasonable and

prejudicial. He claims there could be no tactical reason to fail to request dismissal and, had counsel made the request, "the trial court would have been compelled to dismiss the deadly weapon enhancement." We, however, conclude Fontenette fails to establish his counsel's performance was constitutionally deficient. The record is silent as to defense counsel's reasons for not seeking dismissal of the enhancement, and thus it does not affirmatively disclose an absence of tactical purpose. (*People v. Ledesma* (1987) 43 Cal.3d 171, 218.) Fontenette therefore has not carried his burden of establishing that his counsel's representation was objectively unreasonable, at least for purposes of direct appeal.

Moreover, even if we assume the court was unaware of its sentencing discretion, Fontenette has not carried his burden of showing it is reasonably probable he would have received a lower sentence had his counsel expressly requested relief under section 1385. The court was not, as Fontenette argues, "compelled" to dismiss the enhancement were it proven the charged offenses were not violent felonies. (§ 1385, subd. (c)(2)(F).) Rather, section 1385 requires the court to dismiss an enhancement only "if it is in the furtherance of justice to do so." (*Id.*, subd. (c)(1).) And proof of a relevant mitigating circumstance "weighs greatly in favor of dismissing the enhancement, *unless the court finds that dismissal of the enhancement would endanger public safety*," defined as "a likelihood" that dismissal "would result in physical injury or serious danger to others." (*Id.*, subd. (c)(2), italics added; see also *People v. Anderson* (2023) 88 Cal.App.5th 233, 238-241.)

Although the charged offenses were not "violent felonies," the underlying acts were nonetheless violent and threatening. (§ 1385, subd. (c)(2)(F).) The court, having presided over the trial, knew this. The probation report evidenced Fontenette's convictions were of increasing

severity and violence.  In finding the low term "not appropriate," the trial court expressly relied on Fontenette's "prior criminal history."  On this record, the court likely would have found dismissing the enhancement would "endanger public safety" and thus would not "further[ ] . . . justice."  (§ 1385, subds. (c)(1)-(2).)  Accordingly, Fontenette also fails to establish any ineffective assistance on the part of his counsel prejudiced him.

On this record, we conclude counsel's performance was not ineffective assistance of counsel that can be decided on direct appeal.

III.

We affirm.

CASTILLO, J.

WE CONCUR:


DATO, Acting P. J.


KELETY, J.