Filed 12/6/21  P. v. Johnson CA6

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>   Plaintiff and Respondent,<br><br>v.<br><br>JOE RANDEL JOHNSON,<br><br>   Defendant and Appellant. | H048335<br>(Monterey County<br>Super. Ct. No. SS030945A) |

Defendant Joe Randel Johnson challenges the superior court's resentencing decision in response to his Penal Code section 1170.126[1] petition for resentencing. The court granted his petition and resentenced him.  It imposed a concurrent determinate term for his transportation of a controlled substance conviction, for which he had previously received a sentence of 25 years to life as part of a total sentence that amounted to 57 years to life.  However, the superior court also resentenced him on two attempted robbery counts, which had previously been imposed concurrent to one another, and instead imposed consecutive terms of 25 years to life, resulting in a total term of 50 years to life.

Defendant claims that the superior court abused its discretion and violated his due process rights by failing to consider his post-conviction conduct in prison and by failing to exercise its independent discretion.  We find no abuse of discretion or due process violation and affirm the judgment.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

## II. BACKGROUND

In 2004, defendant was convicted by a jury of two counts of attempted first degree robbery in concert (§§ 211, 213, subd. (a)(1)(A), 664), first degree burglary (§ 459), aggravated assault (§ 245, subd. (a)(1)), transportation of a controlled substance (Health & Saf. Code, former § 11352), and misdemeanor assault (§ 240) for offenses that had occurred in 2002 and 2003. The court found true allegations that defendant had suffered prior controlled substance convictions (Health & Saf. Code, § 11370.2) and two prior strike convictions (§ 1170.12) and had served prison terms for one prior violent felony conviction and two prior felony convictions (§ 667.5, subds. (a), (b)).

At the original sentencing hearing, the trial court noted that "defendant's been in prison most of his adult life and he continues to commit felony offenses." The court found that defendant was "incorrigible and extremely dangerous to society." The trial court committed defendant to state prison to serve a term of 58 years to life, which included a consecutive term of 25 years to life for the transportation count. A term of 25 years to life was imposed for each attempted robbery count, but one of the terms was imposed concurrently to the other. Defendant appealed, and this court remanded for resentencing with directions to strike one of the one-year prison priors. In June 2006, the trial court resentenced defendant to a term of 57 years to life, which, like the original sentence, included a consecutive term of 25 years to life for the transportation count. The terms for the attempted robbery counts were unchanged.

Proposition 36, the Three Strikes Reform Act of 2012, was approved by the electorate in November 2012. (*People v. Johnson* (2015) 61 Cal.4th 674, 684.) Proposition 36 enacted section 1170.126, which provided: "Any person serving an indeterminate term of life imprisonment imposed [under the Three Strikes law] . . . of a felony or felonies that are not defined as serious and/or violent felonies . . . may file a petition for a recall of sentence, within two years after the effective date of the act that added this section or at a later date upon a showing of good cause, before the trial court

that entered the judgment of conviction in his or her case, to request resentencing" under Proposition 36.  (§ 1170.126, subd. (b).)

In 2014 and again in 2017, defendant filed petitions seeking resentencing under Proposition 36.  Although his 2017 petition was filed after the two-year limit, the superior court found in 2019 that he had demonstrated good cause for the delay, and it scheduled a resentencing hearing.

Defendant's appointed counsel filed two briefs in advance of the hearing.  In the first brief, counsel asked the court to resentence defendant to a determinate term of two years eight months for the transportation count, which would result in a total term of 35 years 8 months.  The brief noted that section 1170.126, subdivision (g)(3) provided that the court "may consider the petitioner's criminal conviction history, disciplinary and rehabilitative record while incarcerated, [and] any other evidence relevant to the issue of dangerousness to public safety."[2]  This brief discussed some of defendant's prison records, which were attached to the brief.

The attached records consisted of three exhibits.  Exhibit A was a 2004 "INSTITUTIONAL STAFF RECOMMENDATION" concerning defendant.  It stated: "He has no viable work skills.  Inmate claims states [*sic*] he is disabled."  His initial prison placement score was 58 and his security level was IV.  Exhibit B was a 2018 classification review noting that defendant had no job assignment and had been disciplinary-free for one year.  It stated that his security level was level II with a placement score of 19.  Exhibit C consisted of two chronos from 2015.  The July 1, 2015 chrono reported defendant's participation for six months "in the 1st half" of an NA/AA

_____

[2] Section 1170.126, subdivision (g) provides:  "In exercising its discretion in subdivision (f), the court may consider:  [¶]  (1) The petitioner's criminal conviction history, including the type of crimes committed, the extent of injury to victims, the length of prior prison commitments, and the remoteness of the crimes;  [¶]  (2) The petitioner's disciplinary record and record of rehabilitation while incarcerated; and  [¶]  (3) Any other evidence the court, within its discretion, determines to be relevant in deciding whether a new sentence would result in an unreasonable risk of danger to public safety."

3

"recovery program" during which there had been discussions of the first six of the 12 steps in that program. The chrono stated that defendant "should be commended for his faithful attendance, as well as his open and honest participation in the group." The June 18, 2015 chrono was a "LAUDATORY CHRONO" reporting defendant's participation from April 30, 2015 to June 18, 2015 in the "first unit module" of "San Quentin T.R.U.S.T. (Teaching Responsibility Utilizing Sociological Training)," which was a program intended to "assist men into [*sic*] identifying negative beliefs and behaviors" and developing "positive behavior[s]." This chrono stated that defendant "should be commended for his commitment to be a change agent for himself, family, and community." Defendant's second brief addressed only defendant's eligibility for resentencing.

The prosecution's brief conceded that defendant was eligible for resentencing and that the transportation count should be resentenced, but it asked the court to "effectuate the previous judge's belief that 50 to life is an appropriate sentence." The prosecution suggested that the two attempted robbery counts "be run consecutively" to achieve this. It noted that "[defendant] does very well in prison and is a mess when he is released."

At the June 2020 hearing, defendant's counsel argued that defendant had "been a model inmate for almost two decades at the prison" and had "developed into a positive influence." He encouraged the court to "resentence him completely." The prosecutor also urged the court to fully resentence defendant, but he argued that the court should impose a concurrent term for the transportation count and consecutive terms of 25 years to life for the two attempted robbery counts for a total of 50 years to life.

The court agreed with the prosecutor. It stated: "I'm not here to relitigate anything, Mr. Johnson. Judge Scott was the sentencing trial judge. It was his belief that the appropriate sentence for the conduct at that time was 50 years to life. . . . [S]ince 1983 the defendant cannot claim one calendar year when he has not either been incarcerated or convicted of a new crime. . . . [He v]iolated parole 14 separate times since his release

4

from prison in 1990. . . . [¶] Consequently, I agree with the People. I think I am going to defer to Judge Scott. Although I may and I understand I do have the discretion to do whatever sentencing I want for this, I think 50 years to life is appropriate."

Defendant's counsel protested that "Judge Scott was dealing with a completely different set of circumstances when he imposed the sentence. . . . [¶] Fifty [years] to life basically means that [defendant] will never leave the prison, he will die there. I just don't think that's an appropriate outcome in this case looking at all the facts. I mean there's paperwork from the original Romero motion that shows [defendant] had significant cognitive deficits. His IQ was around 67 at the time. [¶] It just seems an unusually harsh sentence under all the circumstances." The court noted defense counsel's "objection."

The court imposed terms of 25 years to life for each attempted robbery count and ran those consecutively. It imposed a three-year, concurrent term for the transportation count. The total term was 50 years to life. Defendant timely filed a notice of appeal.

## II.    DISCUSSION

Defendant contends that the superior court abused its discretion because it deferred to the original sentencing judge, thereby failing to exercise its independent judgment, and it failed to consider his post-conviction good behavior.

Defendant claims that this case "parallels" *People v. Yanaga* (2020) 58 Cal.App.5th 619. Not so. In *Yanaga*, the resentencing court *expressly refused to consider* defendant's post-conviction conduct in prison. (*Id*. at p. 625.) Here, in contrast, the superior court was merely *silent* concerning the post-conviction evidence.

"[T]he general rule [is] 'that a trial court is presumed to have been aware of and followed the applicable law.'" (*People v. Stowell* (2003) 31 Cal.4th 1107, 1114.) "[I]n the absence of a clear indication to the contrary, [courts have] concluded that in cases in which the trial court record is silent, ordinary principles of appellate review require that an appellate court presume the trial court properly understood" its role. (*People v.*

5

*Fuhrman* (1997) 16 Cal.4th 930, 944.) Thus, when the record is silent, we presume the court did not err. (*Id.* at pp. 944-945.)

Defendant asserts that "[t]here was no indication [that the court] considered appellant's conduct since the judgment," and he argues that the court's statement that it was "going to defer to Judge Scott" reflects that it did not consider defendant's post-conviction conduct. We disagree. Defendant ignores the fact that the court's "defer to Judge Scott" statement was immediately followed by its acknowledgement that "I may and *I understand I do have the discretion to do* **whatever sentencing I want** *for this,* **I think** *50 years to life is appropriate*." (Italics & bold added.) When the court's "defer" statement is taken together with the court's acknowledgement of its discretion and expression of its independent determination of what "is appropriate," the court's statements cannot be viewed as indicating that the superior court did not consider defendant's post-conviction conduct. The court expressly acknowledged that it had discretion to impose a sentence different from the one imposed by Judge Scott and that it was exercising this discretion and concluding for itself ("I think") that 50 years to life was the "appropriate" sentence.

Defendant also claims that the court's "I'm not here to relitigate anything" statement demonstrated that it had not considered defendant's post-conviction conduct. We draw no such inference. Defendant's post-conviction conduct had never previously been litigated, so this statement plainly did not refer to it. This statement is most likely a response to the defense argument that one of defendant's strikes should be stricken, a matter that had been fully litigated previously but which defendant had never ceased to attempt to relitigate.

Although the court made no *express statements* concerning defendant's post-conviction conduct, the record strongly suggests that the court did not fail to consider it. The defense brief filed in September 2019 quoted the portion of section 1170.126, subdivision (g) that permits the court to consider post-conviction

6

conduct, attached documentary evidence of defendant's post-conviction conduct, and discussed that evidence. The prosecution did not challenge the defense brief on this point and merely argued that defendant "does very well in prison and is a mess when he is released." At the June 2020 hearing, defense counsel argued that defendant had "been a model inmate for almost two decades at the prison," and the prosecutor did not claim that defendant's post-conviction conduct should not be considered.

Under the circumstances, it is hardly surprising that the court saw no need to expressly comment on defendant's post-conviction conduct. This is particularly true given the paltry nature of the evidence of defendant's post-conviction conduct presented by the defense. In sum, the defense evidence of defendant's post-conviction conduct was that defendant had no viable work skills, had not worked at all during his 16 years in prison, and had completed only brief sections of two programs, both in 2015, one a six-month program addressing addiction and the other a less-than-two-month program addressing changing negative behaviors. These brief programs during a six-month period of his 16 years of incarceration that was five years prior to the resentencing hearing did not establish defendant's lack of danger to the community.

We conclude that defendant has not established that the superior court failed to consider his post-conviction conduct or that it failed to exercise its independent discretion. Hence, we reject his claim that the superior court abused its discretion when it resentenced him.

We also find no merit in defendant's due process argument because his due process claim is entirely derivative of his abuse of discretion claim. He asserts that his due process rights were violated because the court did not consider his post-conviction conduct and did not exercise its independent discretion. As we reject both of the underlying claims, we also reject his due process argument.

## III.   DISPOSITION

The judgment is affirmed.

7

_____

ELIA, ACTING P.J.

I CONCUR:

_____

BAMATTRE-MANOUKIAN, J.

*People v. Johnson*
H048335

Lie, J., Dissenting:

On resentencing under Proposition 36, the Three Strikes Reform Act of 2012, a defendant is entitled to the trial court's consideration of all aspects of the sentencing decision. (*People v. Hubbard* (2018) 27 Cal.App.5th 9, 12.) On appeal, " ' "[a]ll intendments and presumptions are indulged to support [a judgment] on matters as to which the record is silent, and error must be affirmatively shown." ' " (*People v. Giordano* (2007) 42 Cal.4th 644, 666.) But the record here is not silent. The trial court announced its intention to defer to the original sentencing judge, as urged by the prosecution. The trial court then imposed the same sentence, by means of newly consecutive terms for counts arising from the same transaction or occurrence. Because I believe the record affirmatively shows error, I respectfully dissent.

In 2004, the judge who presided at Johnson's jury trial sentenced Johnson to two concurrent terms of 25 years to life for Counts 2 and 4—Johnson's attempted residential robberies on February 3, 2003, of E.A. and J.M.,[1] respectively, in collecting a drug debt. The prosecution had conceded these counts arose from the same transaction or occurrence. The judge then imposed a consecutive sentence of 25 years to life for Count 9, Johnson's transportation of cocaine found in his hat band the day after the attempted robberies.

In 2020, the parties agreed that Proposition 36 entitled Johnson to resentencing and that a determinate term should now be imposed on Count 9, the transportation offense. The original sentencing judge having since retired, the prosecution urged the trial court to "effectuate the previous judge's belief that 50 to life is an appropriate sentence[,]" and submitted a declaration from trial counsel attesting to the original sentencing judge's intention. At the resentencing hearing, the trial court summarized the prosecution's position "that it was Judge Scott's intention to sentence the defendant to

---

[1] For privacy protection in compliance with California Rules of Court, rule 8.90, the victims' initials are used in lieu of their full names.

50 years to life . . . . [¶] You're asking now the Court to run Count 9 concurrent, but make Counts 2 and 4 consecutive for a term of 50 years to life." Upon confirmation by the prosecutor, the trial court responded: "All right. I'm not here to relitigate anything, Mr. Johnson. Judge Scott was the sentencing trial judge. It was his belief that the appropriate sentence for the conduct at that time was 50 years to life." The trial court later was more explicit: "I agree with the People. I think I am going to defer to Judge Scott."

Abuse of discretion may consist of a refusal to exercise discretion. (*Sunset Drive Corp. v. City of Redlands* (1999) 73 Cal.App.4th 215, 222.) A trial court is to exercise its independent sentencing discretion "with a view toward effectuating, not frustrating, legislative policy." (*People v. Penoli* (1996) 46 Cal.App.4th 298, 304.) By deferring to the original sentencing judge and announcing it would not "relitigate anything," the trial court denied Johnson his entitlement to discretionary resentencing.

The trial court did add, "Although I may and I understand I do have the discretion to do whatever sentencing I want for this, I think 50 years to life is appropriate." But the addition of "I think" to "50 years to life is appropriate" does little more to silence the explicit record of the intention to defer than did "*I think* I am going to defer to Judge Scott" or "*I agree* with the People" in their request that the court "effectuat[e] the previous judge's belief[.]" The trial court's statement that the original sentence was appropriate "*although* [the court had] the discretion to do whatever sentencing [it] want[ed]" at best introduced ambiguity. But ambiguity, too, would warrant remand for the purpose of clarifying what deference the trial court meant and what relitigation it foreclosed. (*People v. Ochoa* (2020) 53 Cal.App.5th 841, 854; *People v. Lua* (2017) 10 Cal.App.5th 1004, 1021.)

When a sentencing court "errs in identifying or articulating its sentencing choices, the reviewing court has no choice but to remand the matter for resentencing unless it finds the error nonprejudicial, i.e., it is 'not reasonably probable that a more favorable

2

sentence would have been imposed in the absence of the error.' [Citation.]" (*People v. Scott* (1994) 9 Cal.4th 331, 355.) "Merely a *reasonable chance*, more than an *abstract possibility*" is sufficient. (*College Hospital, Inc. v. Superior Court* (1994) 8 Cal.4th 704, 715.)

The record suggests a reasonable chance of a more favorable outcome, absent the trial court's deference. In imposing consecutive sentences for Counts 2 and 4, the trial court addressed neither California Rules of Court, rule 4.425 (factors affecting concurrent or consecutive sentences) nor the prosecution's 2004 concession that Johnson had attempted these two robberies in a single transaction or occurrence. Rather, the sole basis cited for imposing consecutive sentences was to replicate the original sentence. Nor was the record wholly devoid of potential mitigating factors relating to Johnson, other than Johnson's performance in prison and his anticipated age at parole eligibility: his counsel in the original sentencing hearing noted Johnson's developmental disability, his IQ of 69, and his brain injury from having been stabbed in the head as a young adult. The availability of these considerations, without presuming how a trial court would ultimately favorable to Johnson was more than mere abstract possibility.

I would reverse and remand the matter for resentencing without deference to the 2004 sentence.

_____
LIE, J.

**People v. Johnson**
**H048355**