Filed 1/15/25  P. v. Reyes CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H051054 |
| Plaintiff and Respondent, | (Monterey County Super. Ct. No. 22CR008682) |
| v. | |
| VERONICA BAUTISTA REYES, | |
| Defendant and Appellant. | |

A jury convicted Veronica Bautista Reyes of one count of assault with a deadly weapon (Pen. Code,[1] § 245, subd. (a)(1)) and one count of corporal injury to a former cohabitant or dating partner (§ 273.5, subd. (a)) on John Doe.[2]  The trial court placed Bautista Reyes on three years of conditional probation and ordered her to serve 180 days in the county jail.

On appeal, Bautista Reyes contends that her trial counsel provided ineffective assistance by failing to timely object to certain testimony offered into evidence, and that one of the conditions of her probation was unconstitutionally vague and issued in violation of the separation of powers doctrine.

---

[1] All further unspecified statutory references are to the Penal Code.
[2] The victim's true name was redacted from the court record.  We use the same naming convention as the trial court.

For the reasons stated below, we remand this matter and direct the trial court to modify the challenged probation condition. In all other respects, we affirm the judgment.

## I. FACTS AND PROCEDURAL BACKGROUND[3]

### A. Facts and Charges

As of September 26, 2022, Doe had been dating Bautista Reyes for three years and living with her for two months. He decided to discontinue the relationship because of Bautista Reyes's "anger issues."

That evening, Doe tried to remove his television from Bautista Reyes's home and to end the relationship. Bautista Reyes pushed him and pulled his shirt to try and keep Doe from leaving. When Doe got outside, Bautista Reyes "sliced" the back of his neck and "scraped" his back with a knife. Doe got away by leaving his television behind and jumping over a fence at the back of the house. He called the police to report the incident.

There were children in the home when the incident occurred.

On September 27, 2022, the Monterey County District Attorney charged Bautista Reyes with one count of assault on John Doe with a deadly weapon (§ 245, subd. (a)(1)) and one count of corporal injury to John Doe, Bautista Reyes's cohabitant or former cohabitant and someone with whom Bautista Reyes has, or previously had, a dating relationship (§ 273.5, subd. (a)).

### B. Procedural Background

#### 1. People's Motion in Limine No. 3

Prior to trial, the parties filed motions in limine. The district attorney sought to admit evidence of Bautista Reyes's prior acts of domestic violence against John Doe pursuant to Evidence Code section 1109 and Family Code section 6211 for the purpose of proving that Bautista Reyes had a propensity for committing acts of domestic violence

---

[3] We set forth the relevant facts in the light most favorable to the jury's verdict. (*People v. Luo* (2017) 16 Cal.App.5th 663, 668, fn. 2; *People v. Campbell* (2020) 51 Cal.App.5th 463, 469.)

(motion No. 3). The district attorney asserted that "[t]he prior violence against [Doe] demonstrates that [Bautista Reyes] habitually resorted to violence when engaged in arguments with those within her domestic circle" but did not set forth the details of the prior incidents of domestic violence. The statement of facts in the People's trial brief asserted that, during a domestic violence incident in August 2021 (August 2021 incident), Bautista Reyes "had her children in her car," Doe "did not want to get in trouble for fighting in front of her children," and Bautista Reyes entered a plea of no contest to one count of causing or permitting cruelty to a child (§ 273a, subd. (b)) in case No. 21CR007016.

At the trial court hearing on the motions in limine, Bautista Reyes objected to the district attorney's failure to provide timely notice of the evidence it sought to introduce, but ultimately waived the 30-day continuance offered by the court because her trial counsel was familiar with the facts of the August 2021 incident. The court granted the district attorney's motion after finding that the probative value of the evidence outweighed any prejudice created by admitting it, the facts of the current offenses were "more serious" than the August 2021 incident, the facts proffered by the district attorney were not so extraordinary so as to confuse or distract the jury from the issues in the instant matter, and the evidence fell "squarely within" the purpose of Evidence Code section 1109.

2. Trial

During his opening statement, the district attorney summarized the facts of the charged September 26, 2022 incident, noting that there were children in the house. In addition, he described the August 2021 incident, stating, in pertinent part, that Doe and Bautista Reyes were "in a car together, they had been drinking. He said she got upset, she thought he'd got a text and wanted to see his phone in case he was cheating on her or talking to some girl. She started scratching at him. He got a cut above the lip, scratch on the side of the neck, scratches on his upper chest. [¶] . . . [A]s he started to drive away

3

she took a rock, smashed out his window and smashed up his bumper. [¶] Her kids were in her car next to it. He called the police, [and] the police took pictures of it."

While testifying regarding Bautista Reyes's prior acts of domestic violence, Doe stated that Bautista Reyes had hit him twice before the September 26, 2022 incident. The first time, they were in a car and she hit him "with the metal," which left a scar on his lips. She also "scraped" his shoulder with a knife. Doe called the police, but Bautista Reyes left the scene before the police arrived.

The August 2021 incident was the second time Bautista Reyes hit Doe. Bautista Reyes had parked her car next to Doe's after work and drank beers with him inside his car. While they were drinking, Doe received a text message, and Bautista Reyes got mad and slapped him. She also "slammed" his car with a rock. He called the police and they arrested her. The district attorney did not ask Doe about, and Doe did not testify to, the presence of Bautista Reyes's children during the August 2021 incident.

Bautista Reyes testified in her own defense. On cross-examination regarding the August 2021 incident, Bautista Reyes admitted to having scratched Doe when her fingernail "went through him" and to throwing a rock at Doe's car because she was angry. When the district attorney asked whether her children were present during the August 2021 incident, she responded that they were present in her car. Bautista Reyes's trial counsel did not object to the question or move to strike Bautista Reyes's response. The district attorney asked Bautista Reyes the ages of her children at the time of the incident and trial counsel objected, citing "[r]elevance." The trial court overruled the objection, and Bautista Reyes responded that one of her children was three and the other was six. The district attorney asked Bautista Reyes if her children stayed alone in her car while she drank beer with Doe in his, and Bautista Reyes's trial counsel again objected, citing relevance. After discussion outside the presence of the jury, the court sustained the objection before the jury.

4

The September 26, 2022 incident, discussed in greater detail *ante* (pt. I.A.), was the third time Bautista Reyes assaulted Doe. The district attorney introduced and the trial court admitted into evidence, without objection from Bautista Reyes's trial counsel, four photographs of the three injuries Doe sustained, one to his neck and two to his back. Officer Erik Santiago, one of the responding officers, testified that three of the photographs were taken on scene, while Doe was being treated, and the other was taken at the Greenfield Police Department later that evening. Officer Santiago also observed Doe's injuries at the scene and deemed them to be fresh wounds. Officer Santiago asserted that when Sergeant De La Torre, another of the responding officers, asked Bautista Reyes "[w]hat happened to [Doe]?," she responded "The knife." When asked "Who had the knife?," she responded " 'I did.' " Officer Santiago stated that Bautista Reyes informed the officers that Doe had "hit her hand" and "she had the knife to defend herself."

Bautista Reyes's trial testimony regarding the instant offenses differed both from Doe's trial testimony and from her initial statement to police officers. Bautista Reyes maintained that she did not cause Doe's injuries and did not know who caused them. She first responded, "I didn't have a knife" and then stated she had a knife to cook for her children and had left it on her table. She acknowledged that the police were unable to find the knife in her house when they searched for it.

Bautista Reyes explained the discrepancies by asserting during trial that she did not understand the police officers' questions that evening because they spoke Spanish and she understands "[j]ust a few words" of Spanish.[4] However, Officer Santiago, a native Spanish speaker, testified that he had conversations with Bautista Reyes in Spanish where

---

[4] Bautista Reyes speaks Triqui; Officer Santiago does not. However, Officer Santiago testified that, in his work in Greenfield, he encounters "people who are primarily Triqui speakers" regularly and is "often able to communicate with them in Spanish."

he and/or other police officers asked her questions in Spanish and she responded in Spanish in a manner that indicated she understood the questions because her responses, including her responses to questions about what happened to Doe, were "relevant to" or "appropriate[] to the questions" asked. Officer Santiago also confirmed that the police were unable to find the knife at the scene after searching the kitchen, hallway, floor, and drawers, and that there was "[n]o sign on a table of a . . . knife just sitting out."

In his closing arguments, although the district attorney mentioned that children were present during the instant offenses, he referred to the August 2021 incident without mentioning the presence of Bautista Reyes's children. In addition, the district attorney highlighted the inconsistencies between Bautista Reyes's statement to law enforcement on the evening of the instant offenses and her trial testimony. He challenged Bautista Reyes's assertion that the inconsistencies were the result of a language barrier, reminding the jury of Officer Santiago's testimony that, over the course of his conversations with Bautista Reyes in Spanish, she had responded to him in a way that "seem[ed] to make sense."

The trial court instructed the jury with standard jury instructions, including instructions regarding what may be considered evidence, factors the jury may consider when judging the credibility of a witness, and the use of prior statements to evaluate a witness's credibility. The court instructed the jury that it could consider evidence of the August 2021 domestic violence incident only if the district attorney had proved by a preponderance of the evidence that Bautista Reyes had committed the claimed domestic violence. The court cautioned the jurors that, even if they determined that Bautista Reyes had committed domestic violence in August 2021, it was "only one factor to consider" and was "not sufficient by itself to prove" her guilt for the present charged offenses and reminded the jurors of the People's burden of proof.

### 3. Verdict and Sentencing

The jury found Bautista Reyes guilty on both counts, assault with a deadly weapon (§ 245, subd. (a)(1)) and inflicting corporal injury on a person in a dating relationship (§ 273.5, subd. (a)). After dismissing the jury, the trial court found, based on the evidence presented at trial, that Bautista Reyes had violated the terms of her probation in the prior prosecution stemming from the August 2021 incident (case No. 21CR007016). In the course of considering remand for the probation violation in that case, the court expressed concern that the present offenses for which Bautista Reyes was convicted included a strike conviction and there was evidence of prior, similar conduct. The court stated that it "was very troubled" about Bautista Reyes leaving her children, aged three and six, in another vehicle while drinking alcohol in Doe's vehicle during the August 2021 incident.

The court reinstated probation and ordered Bautista Reyes to serve 180 days in county jail for case No. 21CR007016, to be served consecutively to the 180 days in county jail imposed pursuant to the jury conviction in the instant case.

The court suspended imposition of sentence and placed Bautista Reyes on formal probation for three years subject to 27 conditions, including, in pertinent part: "[t]otally abstain from the use of alcohol, marijuana, or other controlled substances" (probation condition No. 9); "[s]ubmit to and complete any field sobriety test or alcohol/narcotics testing of your blood, breath, or urine at the request of any probation officer or peace officer" (probation condition No. 10); "[p]articipate in any counseling or substance abuse program the Court deems necessary, including approved residential treatment" (probation condition No. 15); "[p]articipate in any assessment necessary with Behavioral Health to receive Medi-Cal funded substance abuse treatment" (probation condition No. 16); "[p]articipate and comply with treatment case plan as directed by the Monterey County Department of Behavioral Health and/or provider" (probation condition No. 17); and "[c]omplete a one-year domestic violence counseling program approved by the probation

7

officer and attend one two-hour meeting each week" (probation condition No. 21). Bautista Reyes agreed to the terms and conditions of probation.

## II. DISCUSSION

Bautista Reyes argues that her trial counsel was ineffective in failing pretrial to seek exclusion of the evidence referenced in the People's motion No. 3 that Bautista Reyes's children were present during the August 2021 incident and in failing to initially object at trial to the district attorney's questions on that topic. She maintains that such evidence was "inadmissible and highly prejudicial propensity evidence." Bautista Reyes asserts that, although her trial counsel later objected to questions regarding the children's ages and Bautista Reyes leaving them unattended, there was "no tactical reason for [defense] counsel not to object earlier" to the question regarding the presence of the children during that incident. Bautista Reyes contends that because of trial counsel's failure to object earlier, the challenged evidence damaged Bautista Reyes's credibility in the eyes of the jury. She asserts that such damage to her credibility was prejudicial because there was a reasonable probability that the jury would have reached a different verdict if they had not heard that her children were present during the August 2021 incident.

In addition, Bautista Reyes contends that probation condition No. 17, which requires her to " '[p]articipate and comply with treatment case plan [sic] as directed by the Monterey County Department of Behavioral Health and/or provider,' " is unconstitutionally vague. Moreover, she asserts that, by deferring to the direction of the Monterey County Department of Behavioral Health, the court impermissibly delegated to the county its authority to specify the parameters of the treatment.

The Attorney General responds that the evidence regarding the presence of Bautista Reyes's children during the August 2021 incident, while potentially damaging to her case, does not rise to the level of prejudice, noting that " ' "prejudicial" is not synonymous with "damaging." ' " He argues that Bautista Reyes leaving her children in

8

another vehicle during the August 2021 incident had no bearing on her credibility as a witness. He points out the jury heard testimony that children were present during the charged offenses, nullifying any heightened bias resulting from disclosure of the presence of Bautista Reyes's children during the earlier incident. In addition, the Attorney General asserts that the inconsistencies in Bautista Reyes's own testimony were sufficient to undermine her credibility at trial.

The Attorney General contends that probation condition No. 17 is clear when read in conjunction with probation condition No. 15, which requires Bautista Reyes to participate in any counseling or substance abuse program the court deems necessary. Additionally, he asserts that probation condition No. 17, as written, does not violate the separation of powers doctrine because probation condition No. 15 limits the county's powers under probation condition No. 17 to those that the " '[c]ourt deems necessary.' " (Italics omitted.)

### A. Applicable Law

#### 1. Ineffective Assistance of Counsel

"A criminal defendant's federal and state constitutional rights to counsel (U.S. Const., 6th Amend.; Cal. Const., art. I, § 15) includes the right to effective legal assistance. When challenging a conviction on grounds of ineffective assistance, the defendant must demonstrate counsel's inadequacy. To satisfy this burden, the defendant must first show counsel's performance was deficient, in that it fell below an objective standard of reasonableness under prevailing professional norms." (*People v. Mai* (2013) 57 Cal.4th 986, 1009 (*Mai*), italics omitted; see also *Strickland v. Washington* (1984) 466 U.S. 668, 687–688 (*Strickland*); *People v. Hoyt* (2020) 8 Cal.5th 892, 958 (*Hoyt*).) When considering an ineffectiveness claim, the reviewing court must ascertain the reasonableness of defense counsel's challenged conduct in context, i.e., "on the facts of the particular case, viewed as of the time of counsel's conduct." (*Strickland*, at p. 690.)

9

Our inquiry is necessarily "highly deferential." (*Strickland*, *supra*, 466 U.S. at p. 689.) We "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " (*Ibid.*; *Mai*, *supra*, 57 Cal.4th at p. 1009.)

"It is particularly difficult to prevail on an appellate claim of ineffective assistance. On direct appeal, a conviction will be reversed for ineffective assistance only if (1) the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation. All other claims of ineffective assistance are more appropriately resolved in a habeas corpus proceeding." (*Mai*, *supra*, 57 Cal.4th at p. 1009, italics omitted; see also *Hoyt*, *supra*, 8 Cal.5th at p. 958.) Habeas corpus proceedings give the defense counsel an opportunity to explain the reasons for his or her challenged conduct, thereby better allowing courts to " 'evaluate whether counsel's acts or omissions were within the range of reasonable competence.' " (*People v. Wilson* (1992) 3 Cal.4th 926, 936 (*Wilson*); *People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266–267.)

"Second, the defendant must show resulting prejudice, i.e., a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different." (*Mai*, *supra*, 57 Cal.4th at p. 1009; see also *Strickland*, *supra*, 466 U.S. at p. 687; *Hoyt*, *supra*, 8 Cal.5th at p. 958.) "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding. Virtually every act or omission of counsel would meet that test [citation], and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." (*Strickland*, at p. 693.) Rather, we must determine whether, considered in the context of "the totality of the evidence before the

. . . jury" (*id*. at p. 695), the jury "would have had a reasonable doubt respecting guilt." (*Ibid*.; *People v. Hernandez* (2012) 53 Cal.4th 1095, 1108.)

  2.  <u>Probation Conditions</u>

  " 'Trial courts are granted broad discretion under Penal Code section 1203.1 to prescribe conditions of probation.' " (*People v. Penoli* (1996) 46 Cal.App.4th 298, 302 (*Penoli*); *People v. Cervantes* (1984) 154 Cal.App.3d 353, 356.) "However, this discretion is not boundless." (*Cervantes*, at p. 356.) Courts setting probation conditions "must closely tailor [them] to the purpose of the condition to avoid [having them] invalidated as unconstitutionally overbroad" by failing to provide " 'fair warning,' " which consists of " 'the due process concepts of preventing arbitrary law enforcement and providing adequate notice to potential offenders' " under both the United States Constitution and the California Constitution (U.S. Const., 5th & 14th Amends.; Cal. Const., art. I, § 7). (*In re Sheena K.* (2007) 40 Cal.4th 875, 890 (*Sheena K.*); *People v. Smith* (2022) 79 Cal.App.5th 897, 902 (*Smith*).)

  Moreover, "a vague probation condition may also result in an impermissible delegation" of the court's judicial powers to nonjudicial officers in contravention of the separation of powers doctrine (Cal. Const., art. III, § 3). (*Smith*, *supra*, 79 Cal.App.5th at p. 902.) Although a nonjudicial officer, such as a probation officer or an administrative agency, "may properly specify the details necessary to effectuate the court's probation conditions, it is the court's duty to determine the nature of the requirements imposed on the probationer." (*Ibid*.)

  "To survive a vagueness challenge, a probation condition must be precise enough to provide the probationer with notice of what is required or prohibited and allow the court to ascertain whether the probationer has violated its terms." (*Smith*, *supra*, 79 Cal.App.5th at pp. 901–902.) "When construing probation conditions, we consider their context and we use common sense. [Citation.] Where the trial court has made oral or written comments clarifying the probation condition, we may consider those comments in

determining whether a challenged condition is unconstitutionally vague." (*Id*. at p. 902; *Sheena K.*, *supra*, 40 Cal.4th at p. 891 ["[A] probation condition that otherwise would be deemed vague may be constitutional because the [] court offered additional oral or written comments clarifying" the scope of the condition.].)

Concomitantly, " ' " 'if any reasonable and practical construction can be given to [the] language' " ' " of a probation condition, the reviewing court will not invalidate it as unconstitutionally vague. (*People v. Hall* (2017) 2 Cal.5th 494, 501.)

Constitutional challenges to the vagueness of probation conditions "present questions of law that we consider de novo" (*Smith*, *supra*, 79 Cal.App.5th at p. 902; *People v. Appleton* (2016) 245 Cal.App.4th 717, 723), and we may remedy any error by modifying the applicable condition(s). (*Sheena K.*, *supra*, 40 Cal.4th at p. 888.)

### B. Analysis

#### 1. Ineffective Assistance of Counsel

To prove that her trial counsel was constitutionally ineffective, Bautista Reyes must establish both that her counsel's performance was deficient and that she suffered prejudice from counsel's error. (*Strickland*, *supra*, 466 U.S. at p. 687.)

As to the first element, Bautista Reyes bears the burden of demonstrating that her trial counsel's performance fell below an objective standard of reasonableness. (*People v. Stanley* (2006) 39 Cal.4th 913, 954 (*Stanley*).) Bautista Reyes asserts that her trial counsel provided ineffective assistance during trial by failing to timely object to the introduction of evidence of the presence of Bautista Reyes's children during the August 2021 incident through motion No. 3 and to the district attorney's question regarding the same subject matter during trial when there was "no conceivable tactical reason to allow the introduction of this evidence."

Our courts "have made clear that '[s]uch matters as whether objections should be made and the manner of cross-examination are within counsel's discretion and rarely implicate ineffective assistance of counsel.' " (*Mai*, *supra*, 57 Cal.4th at p. 1018.)

12

Moreover " ' "[r]eviewing courts defer to counsel's reasonable tactical decisions in examining a claim of ineffective assistance of counsel [citation], and there is a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.' " [Citation.] "[W]e accord great deference to counsel's tactical decisions" [citation], and we have explained that "courts should not second-guess reasonable, if difficult, tactical decisions in the harsh light of hindsight" [citation]. "Tactical errors are generally not deemed reversible, and counsel's decisionmaking must be evaluated in the context of the available facts." ' " (*Stanley*, *supra*, 39 Cal.4th at p. 954; *Strickland*, *supra*, 466 U.S. at p. 689.)

The record does not disclose why Bautista Reyes's trial counsel failed to object to the district attorney's inclusion in the People's trial brief and questions at trial related to the presence of Bautista Reyes's children during the August 2021 incident. Nor is there any indication in the record that trial counsel was asked for a reason and failed to provide one.

On this record, we cannot say there could be no satisfactory explanation for Bautista Reyes's trial counsel's inaction regarding this evidence. As the Attorney General observes, children were also present during the current offenses. It is conceivable that her trial counsel determined that the evidence of the presence of Bautista Reyes's children during the August 2021 incident would not have adversely impacted the jury's perception of Bautista Reyes given that children were present during the instant offenses.

"Our past decisions establish, with regard to ineffective-assistance-of-counsel claims, that '[if] the record on appeal sheds no light on why counsel acted or failed to act in the manner challenged[,] . . . unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation,' the claim on appeal must be rejected." (*Wilson*, *supra*, 3 Cal.4th at p. 936; *People v. Jones* (2003) 30 Cal.4th 1084, 1116.) Therefore, we reject Bautista Reyes's contention that her trial

13

counsel rendered ineffective assistance by failing to object earlier to the challenged evidence.

Even assuming arguendo that trial counsel had performed deficiently by failing to object and could have precluded the admission of the challenged evidence, Bautista Reyes has not demonstrated that she suffered prejudice. To satisfy this second element, Bautista Reyes must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been more favorable to" her. (*Stanley*, *supra*, 39 Cal.4th at p. 954.) "A reasonable probability is a probability sufficient to undermine confidence in the outcome." (*Ibid*.)

Bautista Reyes argues that the inclusion of evidence regarding the presence of her children during the August 2021 incident was prejudicial to her case because it damaged her credibility with the jury. However, Bautista Reyes does not explain how her children's presence during the August 2021 incident would have adversely impacted her credibility with respect to the current offenses, nor how the absence of such evidence would have created "a reasonable doubt" with respect to her guilt when considered in the context of all the evidence.[5] (*Strickland*, *supra*, 466 U.S. at p. 695.)

_____

[5] Bautista Reyes also asserts that the trial court was aware of the "inflammatory nature" of the evidence regarding Bautista Reyes leaving her young children in another car during the August 2021 incident because the court stated it " 'was very troubled at hearing that [Bautista Reyes] left her six- and three-year-old in a car . . . to get into another car to consume alcohol.' " She argues that the court's opinion indicated that it thought the evidence was more prejudicial than probative. This argument does not assist Bautista Reyes. The court made this remark, stated after the jury had been dismissed, while considering whether to remand Bautista Reyes for her violation of probation for her earlier conviction by plea of causing or permitting cruelty to a child (§ 273a, subd. (b)) in case No. 21CR007016, which was based on her decision to leave her children alone in her car.

In addition, Bautista Reyes argues that the jury "might have felt compelled to punish her" for her August 2021 offense because the parties and the court did not inform the jury that Bautista Reyes had already been convicted for child endangerment. However, " ' "[w]e cannot evaluate alleged deficiencies in counsel's representation solely on defendant's unsubstantiated speculation." ' " (*Mai*, *supra*, 57 Cal.4th at p. 1018.)

The district attorney mentioned the challenged evidence once during opening statement, and asked Bautista Reyes about it once during the trial, but did not address it during closing arguments or rely on it when he argued that Bautista Reyes lacked credibility. Instead, the district attorney challenged Bautista Reyes's credibility by highlighting her inconsistent testimony regarding the circumstances of the current offenses, and Officer Santiago's testimony rebutting Bautista Reyes's contention that such inconsistencies were the result of a language barrier. The isolated references to the presence of Bautista Reyes's children during the earlier incident are insufficient to establish prejudice.

Moreover, the trial court instructed the jurors that "[n]othing that the attorneys say is evidence," that they can consider inconsistencies in a witness's statements when evaluating their credibility, and that evidence of prior, uncharged domestic violence may only be used to evaluate a person's propensity for domestic violence and was "not sufficient by itself to prove" guilt for the present offenses. We must presume that jurors are intelligent and capable of understanding the instructions. (*People v. Covarrubias* (2016) 1 Cal.5th 838, 915.)

In addition, the evidence of Bautista Reyes's guilt was substantial. The contemporaneous photographs of Doe's injuries, Bautista Reyes's initial statements to responding officers, and Officer Santiago's testimony regarding his observations of Doe's injuries and Bautista Reyes's responses to questions about what happened that evening, corroborated Doe's testimony that Bautista Reyes inflicted three injuries to his neck and back with a knife. Bautista Reyes's account that she had the knife simply for cooking was not supported by the subsequent investigation. Moreover, Bautista Reyes had a history of assaulting Doe.

We cannot say there is a reasonable probability the result of Bautista Reyes's trial would have been more favorable to her had her trial counsel objected earlier to the

15

introduction of evidence of the presence of Bautista Reyes's children during the August 2021 incident.

## 2. Vagueness of Probation Condition; Illegal Delegation of Authority

"A probation condition 'must be sufficiently precise for the probationer to know what is required of him [or her], and for the court to determine whether the condition has been violated,' if it is to withstand a challenge on the ground of vagueness." (*Sheena K.*, *supra*, 40 Cal.4th at p. 890.) Here, the plain language of probation condition No. 17 does not specify the type of treatment Bautista Reyes must undergo: "Participate and comply with treatment case plan as directed by the Monterey County Department of Behavioral Health and/or provider."

The trial court did not provide oral guidance during sentencing, and we decide the other probation conditions do not provide a sufficiently clear context to guide our interpretation of probation condition No. 17. Four probation conditions, including probation condition No. 16, refer to substance abuse restrictions and treatment, but a subsequent probation condition requires Bautista Reyes to undergo domestic violence counseling. Probation condition No. 15, on which the Attorney General relies to interpret the challenged condition, refers to "counseling or substance abuse program," but does not specify the type of counseling that may be required. Nor is it clear from the plain language of the probation conditions or the record that "treatment case plan" in probation condition No. 17 is referring to a "counseling or substance abuse program" as set forth in probation condition No. 15. Moreover, as Bautista Reyes contends on appeal, the record indicates she has a history of committing domestic violence but not substance abuse.

It is plausible that the probation officer and the trial court could have intended the treatment case plan referenced in probation condition No. 17 to refer to substance abuse treatment, domestic violence counseling, both, and/or some other category of treatment, such as anger management. Although a probation condition need not be set forth with " 'mathematical certainty,' the language used must have ' "*reasonable* specificity." ' "

16

(*Sheena K.*, *supra*, 40 Cal.4th at p. 890.)  Therefore, we conclude that probation condition No. 17 is unconstitutionally vague as failing to provide Bautista Reyes with notice of the type of treatment she is required to undergo.  We will remand the matter to the trial court to clarify the treatment covered by the treatment case plan to be administered by the Monterey County Department of Behavioral Health pursuant to probation condition No. 17.

On the other hand, we decide that the trial court did not impermissibly delegate the direction of the applicable treatment case plan to the Monterey County Department of Behavioral Health.  Our courts are "poorly equipped to micromanage selection of a program, both because [they] lack[] the ability to remain apprised of currently available programs and, more fundamentally, because entry into [a] particular program may depend on mercurial questions of timing and availability.  The specified program may decline to accept the defendant, for instance, or may be unable to do so for reasons as mundane as lack of space." (*Penoli*, *supra*, 46 Cal.App.4th at p. 308.)  Therefore, we determine that the trial court properly delegated to the county the responsibility for directing the specific details of the treatment care plan, though the court remains responsible for determining and articulating the nature of the required treatment.  (See, e.g., *Smith*, *supra*, 79 Cal.App.5th at p. 902.)

## III.  DISPOSITION

The matter is remanded to the trial court with directions to render a judicial determination of the type(s) of treatment covered by the treatment case plan to be administered by the Monterey County Department of Behavioral Health pursuant to probation condition No. 17 and to modify probation condition No. 17 accordingly.  In all other respects, the judgment is affirmed.

17

_____
Danner, J.

WE CONCUR:


_____
Greenwood, P. J.



_____
Bromberg, J.




**H051054**
*People v. Reyes*